DAUPHIN COUNTY

OFFICE OF THE PROTHONOTARY
101 MARKET STREET, SUITE 100
HARRISBURG, PA 17101
(717) 780-6520 PHONE
(717) 780-6477 FAX

*Prothonotary*
MATTHEW R. KRUPP

*Acting First Deputy*
AUTUMN D. HECK

FILED
HARRISBURG, PA
JAN 09 2020
PER ______ DEPUTY CLERK

January 7, 2020

Hon. Peter J. Welsh, Clerk of Court
U.S. District Court
Middle District of Pennsylvania
P.O. Box 983
Harrisburg, PA 17108

**RE: Robert Garfield, et. al. ~v~ William P. Hankowsky, et. al.**
**Dauphin County Number: 2019-CV- 9529-CV**
**Middle District Number: 1:20-CV-19**

Dear Mr. Welsh:

Pursuant to the January 6, 2020, Notice of Removal in the above referenced matter, enclosed please find all original documents.

Please return to my attention the attached receipt. As always, please do not hesitate to contact me should you require any additional information at 717.780.6520 or via email at mkrupp@dauphinc.org

Very truly yours,

Matthew R. Krupp

Prothonotary

Civil Case Ledger

All Locations
2019-CV-09529-CV

| **Payments** | Receipt | Date | Type | Amount |
|---|---|---|---|---|
| Business Records MGMT Services, INC | 420560 | 12/16/2019 | Civil Filing Payment | 202.00 |
| | | | | 202.00 |

**Judgments/Orders**

| Order Type | Filing Date | Order Date | Status | Status Date |
|---|---|---|---|---|

**Civil Defendant**

Name: Deloach, Thomas C Jr
SSN:
Address:
DOB:
Sex:
Home Phone:
Work Phone:
Employer:
Litigant Type: Civil Defendant
Comment:

**Civil Costs - Deloach, Thomas C Jr**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

**Bonds**

**Civil Defendant**

Name: Dietze, Katherine
SSN:
Address:
DOB:
Sex:
Home Phone:
Work Phone:
Employer:
Litigant Type: Civil Defendant
Comment:

**Civil Costs - Dietze, Katherine**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

**Bonds**

**Civil Defendant**

Name: Fernandez, Antonio
SSN:
Address:
DOB:
Sex:
Home Phone:
Work Phone:
Employer:
Litigant Type: Civil Defendant
Comment:

**Civil Costs - Fernandez, Antonio**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

Civil Case Ledger

All Locations
2019-CV-09529-CV

**Bonds**

**Civil Defendant**

Name: Garton, Daniel P SSN:
Address: DOB:
Sex:

Home Phone: Work Phone:
Employer:
Litigant Type: Civil Defendant
Comment:

**Civil Costs - Garton, Daniel P**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

**Bonds**

**Civil Defendant**

Name: Gifford, Robert G SSN:
Address: DOB:
Sex:

Home Phone: Work Phone:
Employer:
Litigant Type: Civil Defendant
Comment:

**Civil Costs - Gifford, Robert G**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

**Bonds**

**Civil Defendant**

Name: Hankowsky, William P SSN:
Address: DOB:
Sex:

Home Phone: Work Phone:
Employer:
Litigant Type: Civil Defendant
Comment:

**Civil Costs - Hankowsky, William P**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

**Bonds**

**Civil Defendant**

Name: Liberty Property Trust SSN:

**Dauphin 1**

User: SGRIFFITH

Civil Case Ledger

All Locations
2019-CV-09529-CV

Address: DOB:
Sex:

Home Phone: Work Phone:

Employer:
Litigant Type: Civil Defendant
Comment:

**Civil Costs - Liberty Property Trust**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

**Bonds**

**Civil Defendant**

Name: Lingerfelt, David L SSN:
Address: DOB:
Sex:

Home Phone: Work Phone:

Employer:
Litigant Type: Civil Defendant
Comment:

**Civil Costs - Lingerfelt, David L**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

**Bonds**

**Civil Defendant**

Name: Nader, Marguerite SSN:
Address: DOB:
Sex:

Home Phone: Work Phone:

Employer:
Litigant Type: Civil Defendant
Comment:

**Civil Costs - Nader, Marguerite**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

**Bonds**

**Civil Defendant**

Name: Prologis Inc SSN:
Address: DOB:
Sex:

Home Phone: Work Phone:

Employer:

**Dauphin 1**

User: SGRIFFITH

Civil Case Ledger

All Locations

2019-CV-09529-CV

Litigant Type: Civil Defendant

Comment:

**Civil Costs - Prologis Inc**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

**Bonds**

**Civil Defendant**

Name: Raiman, Lawrence D

Address:

SSN:

DOB:

Sex:

Home Phone:

Work Phone:

Employer:

Litigant Type: Civil Defendant

Comment:

**Civil Costs - Raiman, Lawrence D**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

**Bonds**

**Civil Defendant**

Name: Tomczyk, Fredric J

Address:

SSN:

DOB:

Sex:

Home Phone:

Work Phone:

Employer:

Litigant Type: Civil Defendant

Comment:

**Civil Costs - Tomczyk, Fredric J**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

**Bonds**

**Plaintiff**

Name: Garfield, Robert

Address:

SSN:

DOB:

Sex:

Home Phone:

Work Phone:

Employer:

Litigant Type: Plaintiff

Comment:

Civil Case Ledger

All Locations
2019-CV-09529-CV

**Civil Costs - Garfield, Robert**

| Description | Type | Amount | Date |
|---|---|---|---|
| | Civil Costs Total: | | |

**Bonds**

**Dauphin 1** User: SGRIFFITH

Roa Listing

All Locations

2019-CV-09529-CV

| Date | Code | Action | Clerk | Judge |
|---|---|---|---|---|
| **Robert Garfield vs. William P Hankowsky et al.** | | | | |
| 12/16/2019 | CVRECEIPT | Filing: Petition Paid By: Business Records MGMT Services, INC Receipt Number: 420560 Dated: 12/16/2019 Amount: $202.00 | jweaver | No Judge |
| 12/16/2019 | XM-OTH | Complaint, filed.<br><br>AOPC MONTHLY CIVIL COURT STATISTICAL REPORT DATA | AHECK | No Judge |
| 12/16/2019 | XF-CAS | CLASS ACTION SUIT - AOPC MONTHLY CIVIL COURT STATISTICAL REPORT DATA | AHECK | No Judge |
| 12/16/2019 | PRCENT | Brandon S. Harter, Esquire enters appearance on behalf of Robert Garfield. | AHECK | No Judge |
| 12/24/2019 | AFFSRVC | Affidavit of Service of the Civil Cover Sheet, Notice to Defend, Notice Concerning Mediation of Actions Pending Before the Court of Common Pleas, Complaint, Verification and Certificate of Compliance,filed. | AWELCOMER | No Judge |
| 01/06/2020 | TRANSFER | The above Action is TRANSFERRED to the United States District Court for the Middle District of Pennsylvania - to Docket No.: 20 CV 19. | SGRIFFITH | No Judge |
| 01/06/2020 | CONSOLID | **************NO MORE DOCKET ENTRIES****************************<br>CASE TRANSFERRED TO MIDDLE DISTRICT<br>*********************************************** | SGRIFFITH | No Judge |
| 01/06/2020 | REMOVAL | Notice of Removal from the Court of Common Pleas of Dauphin County to the United States District Court for the Middle District of Pennsylvania, filed. | AWELCOMER | No Judge |

JAN 07 2020

I hereby certify that the foregoing is a true and correct copy of the original filed.

Matthew R. Krupp

Prothonotary

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

DAUPHIN County

For Prothonotary Use Only:

Docket No: 2019-CV-9529-CV

2019 DEC 16 PM 1:16

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- [X] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

Lead Plaintiff's Name: ROBERT GARFIELD

Lead Defendant's Name: LIBERTY PROPERTY TRUST

**Are money damages requested?** [X] Yes [ ] No

Dollar Amount Requested: (check one) [ ] within arbitration limits [X] outside arbitration limits

**Is this a *Class Action Suit*?** [X] Yes [ ] No

**Is this an *MDJ Appeal*?** [ ] Yes [ ] No

Name of Plaintiff/Appellant's Attorney: Brandon S. Harter, Esquire

[ ] **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the ONE case category that most accurately describes your *PRIMARY CASE*. If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability (*does not include mass tort*)
- [ ] Slander/Libel/ Defamation
- [ ] Other:

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other:

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional:

**CONTRACT** (*do not include Judgments*)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other
- [ ] Other:

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other:

**CIVIL APPEALS**

Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other
- [ ] Zoning Board
- [ ] Other:

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [X] Other: Breach of Fiduciary Duties

*Updated 1/1/2011*

OFFICE OF PROTHONOTARY
2019 DEC 16 PM 1:16
DAUPHIN COUNTY

Russell, Krafft & Gruber, LLP
Brandon S. Harter, Esquire
Attorney I.D. 307676
930 Red Rose Court, Suite 300
Lancaster, PA 17601
Telephone: (717) 293-9293
Facsimile: (717) 293-5130

*Attorneys for Plaintiff*
*Counsel of Record for this Party*

| | |
|---|---|
| ROBERT GARFIELD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | IN THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY, PENNSYLVANIA |
| PLAINTIFF, | CIVIL DIVISION |
| | NO. 2019-CV-9529-CV |
| -AGAINST- | |
| | **SHAREHOLDER CLASS ACTION COMPLAINT** |
| WILLIAM P. HANKOWSKY, THOMAS C. DELOACH, JR., KATHERINE DIETZE, ANTONIO FERNANDEZ, DANIEL P. GARTON, ROBERT G. GIFFORD, DAVID L. LINGERFELT, MARGUERITE NADER, LAWRENCE D. RAIMAN, FREDRIC J. TOMCZYK, LIBERTY PROPERTY TRUST, AND PROLOGIS, INC., | **JURY TRIAL DEMANDED** |
| DEFENDANTS | |

**NOTICE TO DEFEND**

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS**

**OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**LAWYER REFERRAL SERVICE**
**DAUPHIN COUNTY BAR ASSOCIATION**
**213 NORTH FRONT STREET**
**HARRISBURG, PA 17101**
**TELEPHONE: (717) 232-7536**

## NOTICE

## CONCERNING MEDIATION OF ACTIONS PENDING BEFORE THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY

The Judges of the Court of Common Pleas of Dauphin County believe that mediation of lawsuits is a very important component of dispute resolution. Virtually all lawsuits can benefit in some manner from mediation.

The Court has adopted Dauphin County Local Rule 1001 to encourage the use of mediation. This early alert enables litigants to determine the best time during the life of their lawsuit for a mediation session. The intent of this early alert is to help the parties act upon the requirement to consider good faith mediation at the optimal time.

The Dauphin County Bar Association provides mediation services and can be reached at 717-232-7536. Free mediation sessions for pro bono cases referred by MidPenn Legal Services are available through the DCBA.

## AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

**LAWYER REFERRAL SERVICE**
**DAUPHIN COUNTY BAR ASSOCIATION**

213 NORTH FRONT STREET
HARRISBURG, PA 17101
TELEPHONE: (717) 232-7536

**AVISO**

**REFERENCES A LA MEDIACIÔN DE LAS ACCIONES PENDIENTES ANTES LA CORTE DE SOPLICAS COMUNES DEL CONDADO DE DAUPHIN**

Los jueces de la corte de sûplicas comunes del condado de Dauphin creen que la mediaciôn de pleitos es un componente muy importante de la resoluciôn del conflicto. Virtualmente todos los pleitos pueden beneficiar de cierta manera de la mediaciôn.

La code ha adoptado la regla local de condado de Dauphin 1001 para animar el use de la mediaciôn. Esta alarma temprana permite a litigantes determiner la mejor época durante la vida de su pleito para una sesiôn de la mediaciôn. El intento de esta alarma temprana es actuar sobre la mediaciôn de la buena fe en el tiempo óptimo.

La asociaciôn de la barra del condado de Dauphin proporciona servicios de la mediaciôn y se puede alcanzar en 717-232-7536. La sesiôn libre de la mediaciôn para los favorables casos del bono se refinio por MidPenn que los servicios juridicos están disponibles con el DCBA.

2019 DEC 16 PM 1:16
DAUPHIN COUNTY
PENNA

Russell, Krafft & Gruber, LLP
Brandon S. Harter, Esquire
Attorney I.D. 307676
930 Red Rose Court, Suite 300
Lancaster, PA 17601
Telephone: (717) 293-9293
Facsimile: (717) 293-5130

*Attorneys for Plaintiff*
*Counsel of Record for this Party*

| | |
|---|---|
| ROBERT GARFIELD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | IN THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY, PENNSYLVANIA |
| PLAINTIFF, | CIVIL DIVISION |
| | NO. 2019-CV-9539-CV |
| -AGAINST- | |
| | **SHAREHOLDER CLASS ACTION COMPLAINT** |
| WILLIAM P. HANKOWSKY, THOMAS C. DELOACH, JR., KATHERINE DIETZE, ANTONIO FERNANDEZ, DANIEL P. GARTON, ROBERT G. GIFFORD, DAVID L. LINGERFELT, MARGUERITE NADER, LAWRENCE D. RAIMAN, FREDRIC J. TOMCZYK, LIBERTY PROPERTY TRUST, AND PROLOGIS, INC., | **JURY TRIAL DEMANDED** |
| DEFENDANTS. | |

## COMPLAINT

Plaintiff, by his attorneys, alleges for his Class Action Complaint, upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This lawsuit is a shareholder class action (the "Action") brought by Plaintiff

Robert Garfield, a shareholder of Liberty Property Trust ("LPT" or the "Trust"), on behalf of himself and other LPT shareholders, against LPT, the members of its board of trustees (the "Individual Defendants" or the "Board") as well as Prologis, Inc. ("Prologis").

2. The Action arises from Defendants' actions in causing LPT to agree to be sold to Prologis (the "Sale") for 0.675 of a newly issued share of Prologis common stock for each LPT common share (the "Sale Agreement"), which amounts to $61.33 per share for LPT based on the closing prices of Prologis's stock on the last trading day prior to the public announcement of the Sale. This price is over $10 *less* per share than the $71.86 price per share implied by the discounted cash flow analysis conducted by LPT's own financial advisor – Goldman Sachs & Co. LLC ("Goldman Sachs").[1] Thus, LPT shareholders are being deprived of over $1.66 billion worth of potential lost value when compared to the implied Sale consideration. This discount is especially egregious given that, on average, shareholders of a public company being sold receive a *control premium of over 67%.*[2]

---

[1] The discounted cash flow analysis has been found to be "arguably the most important valuation metric." *See Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, 2009 Del. Ch. LEXIS 210, at *2 (November 18, 2009). *See also Global GT LP v. Golden Telecom, Inc.*, 993 A.2d 497, 510 & n.10 (Del. Ch. 2010) (calling the discounted cash flow (the "DCF") analysis "the most reliable and pertinent" analysis and noting that "the DCF method is frequently used this court and will be given great, and sometimes even exclusive weight . . . ") (internal citations and quotations omitted).

The value of the Trust is likely much greater than that reflected by Goldman Sachs' analysis. This is because in conducting the financial analyses underlying its fairness opinion, Goldman Sachs used management projections which utilized unusually low perpetuity growth rates of 0.3% to 1.9% when it is standard to select a "perpetuity growth rate based on a reasonable premium to inflation . . . because in a steady state, it is assumed that future business growth will approximate that of the overall economy." *Merion Capital L.P. v. Lender Processing Servs.*, 2016 Del. Ch. LEXIS 189, *73 (Dec. 16, 2016) (internal citations omitted); *see also In re Appraisal of AOL Inc.*, 2018 Del. Ch. LEXIS 278, at *11 (Aug. 15, 2018) (finding a 3.5% perpetuity growth rate appropriate).

[2] In this regard, the pre-announcement stock price for LPT represents the value of one share --- a "minority interest." By contrast, the sale price represents the value of all of the stock

3. The Individual Defendants were further motivated to cause a sale of the Trust because, as they have publicly admitted, they have interests in the sale of the Trust to Prologis. Adding to these conflicts, they sought to avoid a contentious proxy fight with activist investor and LPT shareholder, Jonathan Litt, founder of Land & Buildings Investment Management, LLC, who has been named as one of three "activists hedge funds to watch" and who has been agitating for the Trust to sell itself, to Prologis in particular. In addition, LPT's retirement-aged Chief Executive Officer, William P. Hankowsky, gets to preserve his over 13 year legacy with the Trust while reaping a payout of almost $17 million.[3] Eager to appease Mr. Litt, the Individual Defendants failed to maximize the value of the sale of the Trust for all of LPT's shareholders. Instead, they focused their negotiating efforts solely on Prologis and negotiated the extraordinary sale of the Trust to Prologis in just over one month.

4. In order to persuade LPT's shareholders to approve such an unfavorable Sale Agreement, on November 26, 2019, the Individual Defendants filed a proxy statement (the "Proxy") with the SEC and, through such filing, made the same available to Plaintiff and other LPT shareholders in connection with soliciting their vote on the Sale Agreement. The Proxy is deficient, however, because, among other things, it conceals the conflicts of interest of Defendants' purported independent financial advisors, Goldman Sachs and Citigroup Global

---

of LPT --- a "controlling interest." A controlling interest is worth more than a minority interest, on average over 67% more. *See*, *e.g.*, MergerStat, Control Premium Study, at ii (3d Qtr. 2014) (average control premium for domestic transactions was 67.3%).

[3]*See In re MFW S'holders Litig.*, 67 A.3d 496, 529 (Del. Ch. 2013) ("[V]irtually all [directors] will not want to suffer the reputational embarrassment of repudiation at the ballot box. That is especially so in a market where many independent directors serve on several boards, and where institutional investors and their voting advisors, such as ISS and Glass Lewis, have computer-aided memory banks available to remind them of the past record of directors when considering whether to vote for them or withhold votes at annual meetings of companies on whose boards they serve.").

Markets, Inc. ("Citi"), so as not to discredit their recommendations of the Sale to LPT's shareholders. In this regard, while the Proxy touts Goldman Sachs' and Citi's respective opinions that the Sale consideration is fair to Plaintiff and LPT's other public shareholders, it does not disclose that *Goldman Sachs and Citi themselves are Prologis' shareholders*, respectively holding over $668 million and $75 million of Prologis' stock and had increased their holdings in Prologis. Rather, it misleadingly states that Goldman Sachs and Citi "may" (or may not) own Prologis' shares.[4] Further, the Proxy fails to disclose the amount of Citi's $20 million fee which is contingent upon consummation of the Sale Agreement.

## JURISDICTION

5. This Court has jurisdiction over this action because it is the Court of general jurisdiction for Dauphin County where LPT and Prologis regularly conduct business. Moreover, as alleged in more detail *infra*, this Court has jurisdiction over each of the Defendants because they conduct business in or directed their wrongful conduct at, Pennsylvania.

6. Venue is proper in this Court pursuant to Pa. R.C.P. Rule 2179(a)(2) because LPT regularly conducts business in Dauphin County. In this regard, LPT owns over 8 million square feet of property in Dauphin County.

7. This Action challenges the internal affairs or governance of LPT under Pennsylvania law and hence is not removable to Federal Court under the Class Action Fairness

[4] This failure to disclose Goldman Sachs' and Citi's holdings in Prologis is especially egregious as it demonstrates that they in fact had strong incentives to steer a sale of the Company to Prologis because *at the same time* they were advising LPT on a potential sale of the Company both increased their holdings in Prologis; in the case of Goldman Sachs by over 57% from approximately $424 million to over $668 million, and in the case of Citi by over 36% from approximately $55 million to over $75 million. Indeed, just this summer, one court held that "a reasonable stockholder would consider it important that [a company's] financial advisor increased its stake in the acquirer significantly while advising in negotiations against the acquirer." *Ark. Teacher Ret. Sys. v. Alon USA Energy, Inc.*, No. 2017-0453-KSJM, 2019 Del. Ch. LEXIS 245, at * 54 (Ch. June 28, 2019).

Act of 2005 or the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f).

## PARTIES

8. Plaintiff Robert Garfield is a native of Pennsylvania who lived here (except for the years 1962 to 1969 when he was in the Air Force) his entire life, until he semi-retired and moved to Florida several years ago. Plaintiff Garfield graduated from Grove City College, where he received a Bachelor of Science Degree. Plaintiff Garfield now spends a portion of his retirement time managing his retirement portfolio, including an investment in LPT. Plaintiff Garfield has continuously owned LPT's common stock since on or about November 17, 2015.

9. Defendant LPT is a self-administered and self-managed real estate investment trust ("REIT") organized under Maryland law and headquartered at 650 East Swedesford Road, Suite 400, Wayne, PA 19087. Substantially all of LPT's assets are owned directly or indirectly, and substantially all of the Trust's operations are conducted directly or indirectly, by its subsidiary, the Liberty Property Limited Partnership (the "Operating Partnership"), a Pennsylvania limited partnership. The Trust is the sole general partner and also a limited partner of the Operating Partnership, owning 97.7% of the common equity of the Operating Partnership at December 31, 2018. The Trust's sole business purpose is to act as the general partner of the Operating Partnership. The Trust's common shares are traded on the New York Stock Exchange under the symbol "LPT." This Court has jurisdiction over LPT because LPT is headquartered in, and regularly conducts business in, this Commonwealth and because its improper conduct alleged in this Complaint occurred in substantial part, was directed at, and/or intended to have its primary effect in, this Commonwealth.

10. Defendant William P. Hankowsky ("CEO Hankowsky") has served as a trustee of the Trust since May 2003. CEO Hankowsky joined the Trust in January 2001 as Executive Vice

President and Chief Investment Officer, was promoted to the position of President in March 2002 and became the Trust's CEO and Chairman in 2003. Defendants have specifically admitted in the Proxy they filed with the SEC that CEO Hankowsky has interests in the Sale that may be different from, or in addition to, the interests of LPT's shareholders, and thus that he has a conflict of interest with regard to the Sale. The retirement-aged CEO Hankowsky, who has helmed the Trust for over 13 years, seeks to preserve his legacy and sell the Trust, reaping a payout of over $16 million in the process, to avoid the ignominy of being replaced in a contentious proxy fight which activist investor Jonathan Litt had threatened. This Court has jurisdiction over CEO Hankowsky because LPT is headquartered in this Commonwealth and because his improper conduct alleged in this Complaint occurred in substantial part, was directed at, and/or intended to have its primary effect in, this Commonwealth.

11. Defendant Thomas C. DeLoach, Jr. ("Mr. DeLoach") is a longstanding trustee of LPT having served as a trustee of the Trust for over 20 years. Defendants have specifically admitted in the Proxy they filed with the SEC that Mr. Deloach has interests in the Sale that may be different from, or in addition to, the interests of LPT's shareholders, and thus that he has a conflict of interest with regard to the Sale. Adding to this, Mr. DeLoach wanted to avoid the hit his reputation would suffer if activist investor Mr. Litt were to succeed in replacing him on LPT's Board in a contentious proxy fight. This Court has jurisdiction over Mr. DeLoach because LPT is headquartered in this Commonwealth and because his improper conduct alleged in this Complaint occurred in substantial part, was directed at, and/or intended to have its primary effect in, this Commonwealth.

12. Defendant Katherine Dietze ("Ms. Dietze") is a longstanding trustee of LPT having served as a trustee of the Trust over eight years. Defendants have specifically admitted in

the Proxy they filed with the SEC that Ms. Dietze has interests in the Sale that may be different from, or in addition to, the interests of LPT's shareholders, and thus that she has a conflict of interest with regard to the Sale. Adding to this, Ms. Dietze wanted to avoid the hit her reputation would suffer if activist investor Mr. Litt were to succeed in replacing her on LPT's Board in a contentious proxy fight. This Court has jurisdiction over Ms. Dietze because LPT is headquartered in this Commonwealth and because her improper conduct alleged in this Complaint occurred in substantial part, was directed at, and/or intended to have its primary effect in, this Commonwealth.

13. Defendant Antonio Fernandez ("Mr. Fernandez") is a longstanding trustee of LPT having served as a trustee of the Trust over five years. Defendants have specifically admitted in the Proxy they filed with the SEC that Mr. Fernandez has interests in the Sale that may be different from, or in addition to, the interests of LPT's shareholders, and thus that he has a conflict of interest with regard to the Sale. Adding to this, Mr. Fernandez wanted to avoid the hit his reputation would suffer if activist investor Mr. Litt were to succeed in replacing him on LPT's Board in a contentious proxy fight. This Court has jurisdiction over Mr. Fernandez because LPT is headquartered in this Commonwealth and because his improper conduct alleged in this Complaint occurred in substantial part, was directed at, and/or intended to have its primary effect in, this Commonwealth.

14. Defendant Daniel P. Garton ("Mr. Garton") is a longstanding trustee of LPT having served as a trustee of the Trust over 18 years. Defendants have specifically admitted in the Proxy they filed with the SEC that Mr. Garton has interests in the Sale that may be different from, or in addition to, the interests of LPT's shareholders, and thus that he has a conflict of interest with regard to the Sale. Adding to this, Mr. Garton wanted to avoid the hit his reputation

would suffer if activist investor Mr. Litt were to succeed in replacing him on LPT's Board in a contentious proxy fight. This Court has jurisdiction over Mr. Garton because LPT is headquartered in this Commonwealth and because his improper conduct alleged in this Complaint occurred in substantial part, was directed at, and/or intended to have its primary effect in, this Commonwealth.

15. Defendant Robert G. Gifford ("Mr. Gifford") has served as a trustee of the Trust at all relevant times. Defendants have specifically admitted in the Proxy they filed with the SEC that Mr. Gifford has interests in the Sale that may be different from, or in addition to, the interests of LPT's shareholders, and thus that he has a conflict of interest with regard to the Sale. Adding to this, Mr. Gifford wanted to avoid the hit his reputation would suffer if activist investor Mr. Litt were to succeed in replacing him on LPT's Board in a contentious proxy fight. This Court has jurisdiction over Mr. Gifford because LPT is headquartered in this Commonwealth and because his improper conduct alleged in this Complaint occurred in substantial part, was directed at, and/or intended to have its primary effect in, this Commonwealth.

16. Defendant David L. Lingerfelt ("Mr. Lingerfelt") is a longstanding trustee of LPT having served as a trustee of the Trust over twenty-four years. Defendants have specifically admitted in the Proxy they filed with the SEC that Mr. Lingerfelt has interests in the Sale that may be different from, or in addition to, the interests of LPT's shareholders, and thus that he has a conflict of interest with regard to the Sale. Adding to this, Mr. Lingerfelt wanted to avoid the hit his reputation would suffer if activist investor Mr. Litt were to succeed in replacing him on LPT's Board in a contentious proxy fight. This Court has jurisdiction over Mr. Lingerfelt because LPT is headquartered in this Commonwealth and because his improper conduct alleged in this Complaint occurred in substantial part, was directed at, and/or intended to have its

primary effect in, this Commonwealth.

17. Defendant Marguerite Nader ("Ms. Nader") has served as a trustee of the Trust at all relevant times. Defendants have specifically admitted in the Proxy they filed with the SEC that Ms. Nader has interests in the Sale that may be different from, or in addition to, the interests of LPT's shareholders, and thus that she has a conflict of interest with regard to the Sale. Adding to this, Ms. Nader wanted to avoid the hit her reputation would suffer if activist investor Mr. Litt were to succeed in replacing her on LPT's Board in a contentious proxy fight. This Court has jurisdiction over Ms. Nader because LPT is headquartered in this Commonwealth and because her improper conduct alleged in this Complaint occurred in substantial part, was directed at, and/or intended to have its primary effect in, this Commonwealth.

18. Defendant Lawrence D. Raiman ("Mr. Raiman") has served as a trustee of the Trust at all relevant times. Defendants have specifically admitted in the Proxy they filed with the SEC that Mr. Raiman has interests in the Sale that may be different from, or in addition to, the interests of LPT's shareholders, and thus that he has a conflict of interest with regard to the Sale. Adding to this, Mr. Raiman wanted to avoid the hit his reputation would suffer if activist investor Mr. Litt were to succeed in replacing him on LPT's Board in a contentious proxy fight. This Court has jurisdiction over Mr. Raiman because LPT is headquartered in this Commonwealth and because his improper conduct alleged in this Complaint occurred in substantial part, was directed at, and/or intended to have its primary effect in, this Commonwealth.

19. Defendant Fredric J. Tomczyk ("Mr. Tomczyk") is a longstanding trustee of LPT having served as a trustee of the Trust over five years. Defendants have specifically admitted in the Proxy they filed with the SEC that Mr. Tomczyk has interests in the Sale that may be different from, or in addition to, the interests of LPT's shareholders, and thus that he has a

conflict of interest with regard to the Sale. Adding to this, Mr. Tomczyk wanted to avoid the hit his reputation would suffer if activist investor Mr. Litt were to succeed in replacing him on LPT's Board in a contentious proxy fight. This Court has jurisdiction over Mr. Tomczyk because LPT is headquartered in this Commonwealth and because his improper conduct alleged in this Complaint occurred in substantial part, was directed at, and/or intended to have its primary effect in, this Commonwealth.

20. Defendant Prologis is a self-administered and self-managed REIT organized under Maryland law and headquartered in San Francisco, CA. Prologis is the sole general partner of Prologis, L.P., which holds substantially all of Prologis' assets. Its common shares are traded on the New York Stock Exchange under the symbol "PLD." This Court has jurisdiction over Prologis because it regularly conducts business in this Commonwealth and because its improper conduct alleged in this Complaint occurred in substantial part, was directed at, and/or intended to have its primary effect in, this Commonwealth.

## CLASS ACTION ALLEGATIONS

21. Plaintiff also brings this Action as a class action pursuant to Pa. R.C.P. 1702 *et seq.* on behalf of himself and all public common stockholders of the Trust. Excluded from the Class are (1) Defendants, members of the immediate families of the Defendants, their heirs and assigns, and those in privity with them, (2) holders of 5% or more, in the aggregate, of LPT's stock and their Related Persons (as defined by SEC rules), (3) Land & Buildings Investment Management, LLC and its affiliates and Related Persons, and (4) Sean Griffith and any other shareholder who purchased his, her or its shares solely for the purpose of objecting to any potential settlement of this action.

22. The members of the Class are so numerous that joinder of all of them would be impracticable. As of February, 2019, the Trust had approximately 147 million shares of common stock outstanding held by 820 holders of record, and thousands of beneficial owners.

23. There are questions of law and fact common to the members of the Class, including whether:

(a) the Defendants have breached and are continuing to breach their fiduciary duties to the detriment of LPT shareholders; and

(b) the Class has been damaged and the extent to which members of the Class have sustained damages, and what is the proper measure of those damages.

24. Plaintiff will fairly and adequately assert and protect the interests of the Class under the criteria set forth in Pa. R.C.P. 1709. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel competent and experienced in this type of litigation. Plaintiff's counsel is experienced in this type of litigation and will adequately represent the interests of the Class. Plaintiff does not have any conflicts of interest in the maintenance of the class action. Plaintiff has or can acquire adequate financial resources to assure that the interests of the Class will not be harmed.

25. A class action provides a fair and efficient method for adjudication of this controversy under the criteria set forth in Pa. R.C.P. 1708. Common questions of law or fact predominate over any question affecting only individual members. Plaintiff anticipates no difficulty in the management of the action as a class action. Further, the prosecution of separate actions by or against individual members of the class would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the Class which would confront the party opposing the class with incompatible standards of conduct, and (ii) adjudications with

respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

26. This Court is appropriate for the litigation of the claims of the entire Class since Defendant LPT regularly conducts business in Dauphin County.

27. A class action is a fair and efficient method of adjudicating this controversy because the separate claims of individual class members are insufficient in amount to support separate actions in view of the complexities of the issues and the expenses of litigation. Further, it is possible that the amount which may be recovered by individual class members may be too small in relation to the expense

and effort of administering the action as not to justify a class action.

28. The parties opposing the Class have acted or refused to act on grounds generally applicable to the Class, thereby making final equitable or declaratory relief appropriate with respect to the Class.

## SUBSTANTIVE ALLEGATIONS

### A. Notwithstanding LPT's Stability and Prospects for Future Growth as a Standalone Company, the Board Caused It to Enter an Agreement to Be Purchased by Prologis Pursuant to an Inadequate Process and at an Unfair Price

29. LPT is a strong company with the potential for greater growth. Prior to the Sale Agreement, LPT was repositioning itself as a pure-play industrial REIT, the market for which CEO Hankowsky noted as recently as July, 2019 had "***enduring strength***" and "***provides unprecedented opportunity*** to achieve high retention rates while at the same time drive rents, minimize leasing costs, and lock in longer lease terms with contractual rent increases on every lease." LPT was particularly positioned to capitalize on this "unprecedented opportunity" as it operates in 13 of the

top 15 industrial markets, with such high profile established companies as Amazon, Home Depot, Procter & Gamble Distributing, Kellogg, and XPO Last Mile as major tenants, and with access to over 60% of the nation's industrial lease deal flow.

30. On October 27, 2019, LPT and Prologis announced that they had entered into an agreement by which Prologis will acquire LPT in an all-stock transaction valued at approximately $12.6 billion. Under the terms of the Sale Agreement, LPT shareholders will receive a fixed exchange ratio of 0.675 Prologis shares for each share of LPT common stock, representing an implied value of $61.33 per share.[5] This price is over $10 *less* per share than the $71.86 price per share implied by the discounted cash flow analysis conducted by LPT's own financial advisor – Goldman Sachs.[6] Thus, LPT shareholders are being deprived of over $1.66 billion worth of potential lost value when compared to the implied Sale consideration.

---

[5] Defendants claim that the $61.33 per share price Prologis is paying for LPT offers a premium of approximately 21.3% to LPT's share price, based on closing prices on October 25, 2019, the last trading day prior to the public announcement of the Sale Agreement. However, analysts following LPT generally agree that LPT's shares were trading at a discount to its net asset value. Indeed, in May 2019, the Board had even formulated an "action plan" to close LPT's valuation gap.

[6] The discounted cash flow analysis has been found to be "arguably the most important valuation metric." *See Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, 2009 Del. Ch. LEXIS 210, at *2 (November 18, 2009). *See also Global GT LP v. Golden Telecom, Inc.*, 993 A.2d 497, 510 & n.10 (Del. Ch. 2010) (calling the discounted cash flow (the "DCF") analysis "the most reliable and pertinent" analysis and noting that "the DCF method is frequently used this court and will be given great, and sometimes even exclusive weight . . . ") (internal citations and quotations omitted).

The value of the Trust is likely much greater than that reflected by Goldman Sachs' analysis. This is because, in conducting the financial analyses underlying its fairness opinion, Goldman Sachs used management projections which utilized unusually low perpetuity growth rates of 0.3% to 1.9% when it is standard to select a "perpetuity growth rate based on a reasonable premium to inflation . . . because in a steady state, it is assumed that future business growth will approximate that of the overall economy." *Merion Capital L.P. v. Lender Processing Servs.*, 2016 Del. Ch. LEXIS 189, *73 (Dec. 16, 2016) (citations omitted); *see also In re*

31. The Sale consideration is also unfair because the exchange ratio is fixed and will not be adjusted even if the share prices of either Prologis or LPT change. As a result, LPT shareholders bear the risk that the Sale consideration they receive will be less than the implied consideration of $61.33. Indeed, LPT shareholders cannot be sure of the market value of the Sale consideration they will receive upon the closing of the Sale.

32. In addition, LPT shareholders' ownership interest will be diluted as a result of the Sale. It is estimated that continuing Prologis shareholders will own about 86% of the combined company shares while former LPT shareholders will own only about 14%. Thus, LPT shareholders will generally have less influence over the management and policies of the combined company than they currently have over the management and policies of LPT.

33. The Sale Agreement was the product of a rushed process in which LPT's Board reached out to only one other potential buyer, identified as Party A in the Proxy, and gave it five days to submit a proposal to acquire the Trust without even giving it the benefit of conducting due diligence so it could submit a fully informed offer. The Board then neglected to conduct any follow up negotiations with Party A.

34. Oddly, the Board apparently chose to negotiate exclusively with Prologis and to insist on a "no-shop provision" on its own initiative. This failure to engage in a sale process was particularly detrimental because of LPT's strong negotiating position as one of the few companies with high-value real estate portfolios. Indeed, in a July 16, 2019 earnings call Prologis's Chairman and CEO acknowledged that companies with high-value real estate portfolios were in "limited supply" stating as follows:

I think the level and the availability of high quality portfolios is dwindling and these

---

*Appraisal of AOL Inc.*, 2018 Del. Ch. LEXIS 278, at *11 (Aug. 15, 2018) (finding a 3.5% perpetuity growth rate appropriate).

> portfolios are going into capital sources that are permanent. And I think there is a limited supply of this stuff and then really good market. So whenever there is an opportunity to pick up some of those assets in scale, you will see us competing for those opportunities. And because of the clustering effect around our own portfolio, which is also focused on the same markets we can really squeeze a lot more juice out of those oranges.

Obtained from https://www.fool.com/earnings/call-transcripts/2019/07/16/prologis-inc-pld-q2-2019-earnings-call-transcript.aspx.

35. On information and belief, the decision to enter into the Sale Agreement was driven by LPT's directors desire to appease activist investor Jonathan Litt, founder of Land & Buildings Investment Management, LLC. In this regard, in July 2019, Mr. Litt sent a letter to the Board members advocating for a sale of the Trust. In the letter, Mr. Litt stated his concern that LPT shares trade at a discount to the net asset value despite its public peers trading at premiums to net asset value. Indeed, Mr. Litt specifically pointed to Prologis as a potential acquiror, citing its chairman and CEO's statements in its second quarter 2019 earnings (quoted above).

36. This letter came after about one year of Mr. Litt's agitation for a sale of LPT. The Board, on information and belief, was aware of Mr. Litt's reputation and sought to sell LPT in order to avoid a potential proxy fight. In this regard, Mr. Litt has been known "to aggressively target companies he deems undervalued ***and in need of leadership*** or strategy changes." *See* Nivedita Bhattacharjee, "*Activist Investor Threatens Proxy War at Hudson's Bay*," THE WALL STREE JOURNAL, July 31, 2017, https://www.reuters.com/article/us-hudson-s-bay-land-and-buildings/activist-investor-threatens-proxy-war-at-hudsons-bay-idUSKBN1AG1LR.

37. The Defendants further tilted the sale process in favor of a sale of the Trust by hiring Goldman Sachs and Citi to advise on the Sale notwithstanding that both have extensive relationships with Prologis and are holders of Prologis's stock. In his regard, the Proxy provides as follows with regard to Goldman Sachs' extensive relationship with Prologis:

> Goldman Sachs also has provided certain financial advisory and/or underwriting services to Prologis and its affiliates from time to time for which the Investment

> Banking Division of Goldman Sachs has received, and may receive, compensation, including having acted as joint-bookrunner on a public offering of investment units in Nippon Prologis REIT, an affiliate of Prologis (aggregate principal amount ¥29.5 billion) in March 2018; as co-manager on Prologis' public offering of 3.875% notes due 2028, and 4.375% notes due 2048 (aggregate principal amount $700 million) in June 2018; as joint-bookrunner on Prologis' public offering of 1.875% senior notes due 2029 (aggregate principal amount €700 million) in July 2018; as co-manager on a public offering of Prologis'' 0.652% Notes due 2025, 0.972% Notes due 2028, 1.077% Notes due 2030, and 1.470% Notes due 2038 (aggregate principal amount ¥55.1 billion) in September
> 2018; as joint-bookrunner on a public offering of investment units by Nippon Prologis REIT (aggregate principal amount ¥36.6 billion) in June 2019; and as jointbookrunner on a public offering by Prologis of 1.500% Medium-Term Notes due 2049, 0.625% Medium-Term Notes due 2031 and 0.250% Medium-Term Notes due 2027 (aggregate principal amount €1.8 billion) in August 2019.

38. The Proxy also provides as follows with regard to Citi's extensive relationship with Prologis:

> Citi and its affiliates in the past have also provided, and are currently providing, services to Prologis and its affiliates unrelated to the proposed transaction, for which services Citi and its affiliates have received and expect to receive compensation, including, without limitation, during the two-year period prior to the date of its opinion, having acted as (a) advisor to Prologis on the sale of a $1.1 billion portfolio of U.S. and European logistics assets to Mapletree Investments Pte Ltd completed in 2018, (b) co-manager on Prologis' offering of three series of notes in an aggregate principal amount of €1.8 billion in August 2019, (c) co-manager on Prologis' issuance of 0.652% Notes due 2025 in an aggregate principal amount of ¥5 billion, 0.972% Notes due 2028 in an aggregate principal amount of ¥40 billion, 1.077% Notes due 2030 in an aggregate principal amount of ¥5.1 billion, and 1.470% Notes due 2038 in an aggregate principal amount of ¥5 billion, in September 2018, (d) co-manager on Prologis' €700 million issuance of senior notes due in January 2029, in July 2018, (e) bookrunner on Prologis' offering of two series of notes in an aggregate principal amount of $700 million, consisting of $400 million aggregate principal amount of 3.875% notes due September 15, 2028, and $300 million aggregate principal amount of 4.375% notes due September 15, 2048, in June 2018, (f) bookrunner on Prologis' £500 million issuance of senior notes with an interest rate of 2.3%, maturing in June 2029, (g) lender under Prologis' $3.5 billion global senior credit facility, and (h) lender under Prologis' $500 million senior term loan facility.

39. Given Citi's and Goldman Sachs's extensive and lucrative relationship with Prologis, they had more to gain from catering to Prologis's interests. Indeed, Prologis has

specifically indicated that it anticipates making additional acquisitions and investments following the close of the Sale, and therefore it presumably will require the services of its long-standing financial advisors such as Goldman Sachs and Citi. The conflict of interests arising from Goldman Sachs and Citi's relationship with Prologis cannot be overstated since, as Delaware's noted Vice Chancellor Laster has noted, bankers may "shade [their] advice . . . to avoid displeasing [those from whom] they wish to have repeat business." Afra Afsharipour and J. Travis Laster, *Enhanced Scrutiny on the Buy Side*, 53 GEORGIA LAW REVIEW 443, 455-457 (2019).

40. Further, Defendants sought to obscure the extent of Goldman Sachs and Citi's ties to Prologis by misleadingly stating in the Proxy that they "may" have holdings in Prologis when the reality is that Goldman Sachs held over $668 million worth of Prologis' stock while Citi held over $75 million. Indeed, in the past year while Goldman Sachs and Citi were advising LPT on a potential sale of the Company, both *increased their holdings in Prologis*; in the case of Goldman Sachs by over 57% from approximately $424 million to over $668 million, and in the case of Citi by over 36% from approximately $55 million to over $75 million. Thus, both Goldman Sachs and Citi had incentives to steer a sale of the Company to Prologis.

41. The Board also incentivized Goldman Sachs and Citi to favor the Sale Agreement by, in the case of Goldman Sachs, making its entire approximately $30 million fee contingent upon consummation of the Sale, and, in the case of Citi, making a large majority of its $20 million fee contingent on consummation of the Sale.

**B. <u>The Materially Misleading and/or Incomplete Proxy</u>**

42. In addition, the Individual Defendants are breaching their fiduciary duties of full disclosure to Plaintiff and LPT's other public shareholders in connection with the Sale. In this regard, on November 26, 2019, the Individual Defendants caused the Trust to file, jointly with

Prologis, the Proxy with the SEC and, through such filing distribute the Proxy to Plaintiff and LPT's other public shareholders. However, the Proxy is deficient in that it misrepresents and/or omits, *inter alia*, material information as set forth below:

(i) According to the Proxy, Goldman Sachs and its affiliates and employees, and funds or other entities they manage or in which they invest or have other economic interests or with which they co-invest, *may* at any time purchase, sell, hold or vote long or short positions and investments in securities, derivatives, loans, commodities, currencies, credit default swaps and other financial instruments of Prologis, any of its affiliates and third parties, or any currency or commodity that may be involved in the transaction contemplated by the sale agreement. The Proxy is misleading because while it states that Goldman Sachs "*may*" hold investments in Prologis, Goldman Sachs in fact held over $668 million of Prologis's shares at the time it rendered its fairness opinion on the Sale and, in fact, had increased its holdings in Prologis in the past year (while it was advising LPT on potential sale partners, including Prologis) by over 57%.

Information pertaining to the conflicts of interest of the Trust's financial advisor, whose fairness opinion is touted to shareholders, is material and must be disclosed so that Plaintiff and LPT's other public shareholders can determine how much weight to give the fairness opinion. Indeed, just this summer, one court held that "a reasonable stockholder would consider it important that [a company's] financial advisor increased its stake in the acquirer significantly while advising in negotiations against the acquirer." *Ark. Teacher Ret. Sys. v. Alon USA Energy, Inc.*, No. 2017-0453-KSJM, 2019 Del. Ch. LEXIS 245, at * 54 (Ch. June 28, 2019).

(ii) According to the Proxy, Citi and its affiliates *may* actively trade or hold the securities of Prologis for its own account or for the account of its customers and, accordingly, may at any time hold a long or short position in such securities. The Proxy is misleading because while it states that Citi "*may*" hold investments in Prologis the fact is that Citi held over $75 million worth of Prologis' shares at the time it rendered its fairness opinion on the Sale and, in fact, had increased its holdings in Prologis in the past year (while it was advising LPT on potential sale partners, including Prologis) by over 36%.

Information pertaining to the conflicts of interest of the Trust's financial advisor, whose fairness opinion is touted to shareholders, is material and must be disclosed so that Plaintiff and LPT's other public shareholders can determine how much weight to give the fairness opinion. Indeed, just this summer, one court held that "a reasonable stockholder would consider it important that [a company's] financial advisor increased its stake in the acquirer significantly while advising in negotiations against the acquirer." *Ark. Teacher Ret. Sys. v. Alon USA Energy,*

*Inc.*, No. 2017-0453-KSJM, 2019 Del. Ch. LEXIS 245, at * 54 (Ch. June 28, 2019).

(iii) According to the Proxy, LPT has agreed to pay Citi for its services in connection with the proposed transaction an aggregate fee of approximately $20 million, of which a part was payable upon delivery of Citi's opinion and the large majority is payable contingent upon consummation of the transaction. The Proxy is deficient because it fails to disclose the amount of Citi's fee that is contingent upon consummation of the transaction.

Information pertaining to the conflicts of interest of the Trust's financial advisor, whose fairness opinion is touted to shareholders, is material and must be disclosed so that Plaintiff and LPT's other public shareholders can determine how much weight to give the fairness opinion. In fact, courts have found this specific information to be particularly material noting that the amount of the contingent portion of a fee has the potential to provide an "extraordinary incentive for a [financial advisor] to support [a transaction]" and therefore is "material to [a shareholder's] decision to support or oppose the Transaction." *In re Atheros Communs., Inc. S'holder Litig.*, 2011 Del. Ch. LEXIS 36, at *28-29 (Mar. 4, 2011)

(iv) According to the Proxy, for part of its Selected Public Companies Analysis, Citi applied selected ranges of 2020 EBITDA Multiples derived from the Selected Public Companies of 22.3x to 29.9x to the corresponding management forecast of LPT's 2020 estimated Adjusted EBITDA, selected ranges of 2020 FFO Multiple derived from the Selected Public Companies of 22.5x to 25.8x to the corresponding management forecast of LPT's estimated 2020 FFO per share, selected ranges of 2020 AFFO Multiple derived from the Selected Public Companies of 25.3x to 33.6x to the corresponding management forecast of LPT's estimated 2020 AFFO per share, and selected ranges of NAV Premium/Discount derived from the Selected Public Companies of 2.9% to 29.4% to the corresponding range of management estimates of LPT's NAV per share. The Proxy is deficient because it fails to disclose management's estimates of LPT's NAV per share.

Information relied on by LPT's financial advisor, whose fairness opinion is touted to shareholders, is material and must be disclosed so that Plaintiff and LPT's other public shareholders can determine how much weight to give the fairness opinion. This information is particularly material here given the consensus by analysts that LPT's shares traded at a discount to LPT's net asset value and that LPT's Board had even formulated an "action plan" to close LPT's valuation gap.

(v) According to the Proxy, on September 26, 2019, the LPT board held its regularly scheduled meeting during which it discussed and considered the following alternatives to pursuing the potential stock-for-stock transaction with and as proposed by Prologis: (i) continuing to pursue LPT's existing business strategy as

an independent, stand-alone company, (ii) the viability of pursuing another strategic combination and (iii) exploring possible cash sale transactions, including with Party A. Following discussion, the LPT board authorized senior management and Goldman Sachs and Citi to continue engaging in dialogue with Prologis regarding the potential transaction. The LPT board discussed and agreed that if an agreement in principle on the terms of such a transaction could be reached, an appropriate period of exclusivity would likely be established in which the parties would seek to enter into a definitive agreement. The Proxy is deficient because it fails to disclose the substance of the board's discussions regarding (a) continuing to pursue LPT's existing business strategy as an independent, stand-alone company, (b) the viability of pursuing another strategic combination and (c) exploring possible cash sale transactions, including with Party A.

This information is material for LPT's shareholders to determine the extent to which the Individual Defendants complied with their fiduciary duties to them, and whether the Sale Agreement is in their best interests.

(vi) According to the Proxy, in connection with rendering its fairness opinion, Goldman Sachs reviewed, among other things, certain publicly available research analyst reports for LPT and Prologis. The Proxy is deficient because it fails to identify the source and dates of the research analyst reports for LPT and Prologis upon which Goldman Sachs relied.

Information relied on by the LPT's financial advisor, whose fairness opinion is touted to shareholders, is material and must be disclosed so that Plaintiff and LPT's other public shareholders can determine how much weight to give the fairness opinion.

(vii) According to the Proxy, for its *Illustrative Implied Premia of Precedent REIT Transactions* analysis, Goldman Sachs reviewed and analyzed, using publicly available information, the acquisition premia for transactions announced since April 25, 2013 involving a U.S. listed REIT target, where the disclosed transaction value exceeded $500 million. The Proxy is deficient because it fails to disclose the specific transactions included in this analysis, including the date of each transaction.

Information relied on by the LPT's financial advisor, whose fairness opinion is touted to shareholders, is material and must be disclosed so that Plaintiff and LPT's other public shareholders can determine how much weight to give the fairness opinion.

## FIRST CAUSE OF ACTION

## CLAIM FOR BREACH OF FIDUCIARY DUTIES

***(Against the Individual Defendants)***

43. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

44. By reason of the foregoing, the Individual Defendants have breached their fiduciary duties of, *inter alia*, good faith, loyalty, fair dealing, and due care to Plaintiff and Class members and/or aided and abetted in the breach of those fiduciary duties.

45. As a result of these breaches of fiduciary duties, Plaintiff and the Class have been and will be damaged and will be irreparably harmed absent an injunction.

## SECOND CAUSE OF ACTION

## CLAIM FOR FAILURE TO DISCLOSE

***(Against All Defendants)***

46. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

47. Pursuant to the Sale Agreement, LPT and Prologis jointly prepared and caused the Proxy to be filed with the SEC, and through such filing, distributed the same to Plaintiff and LPT other public shareholders.

48. The Proxy is materially misleading as it fails to disclose the information set forth above.

49. As a result of the failures to disclose material information, Plaintiff and the Class have been and will be damaged and will be irreparably harmed absent injunctive relief.

## THIRD CAUSE OF ACTION

## AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY

***(Against Prologis)***

50. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

51. The Individual Defendants owed Plaintiff and LPT's other public shareholders duties of care, loyalty, good faith, fair dealing and disclosure. As earlier alleged, the Individual

Defendants breached these fiduciary duties. Prologis has aided and abetted, and is aiding and abetting, the Individual Defendants in their breaches of their fiduciary duties to the Plaintiff and the Trust's other public shareholders by, among other things, jointly issuing the Proxy with knowledge that it fails to disclose material information. Further, the proposed sale of LPT to Prologis could not take place without the knowing participation of Prologis.

52. As a result, Plaintiff and the Class have been and will be damaged.

53. As a result, LPT has and will be harmed.

WHEREFORE, Plaintiff demands judgment, including injunctive relief, as follows: (i) determining that this action is properly maintainable as a class action, and that Plaintiff is a proper class representative; (ii) declaring that the Individual Defendants have breached their fiduciary duties to Plaintiff and LPT's other public shareholders and that Prologis has aided and abetted those breaches; (iii) requiring the Defendants to cause LPT and Prologis to make corrective and complete disclosures or enjoining or unwinding the Sale Agreement if they do not; (iv) declaring that the Defendants' conduct has resulted in or will result in damages to Plaintiff and the Class; (v) enjoining consummation of the Sale Agreement until trial; (vi) awarding Plaintiff and the Class compensatory and/or rescissory damages (in an amount in excess of arbitration limits) as allowed by law; (vii) awarding interest, attorney's fees, expert fees and other costs, in an amount to be determined; and (viii) granting such other relief as the Court may find just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all counts of this Complaint that are so triable.

RUSSELL, KRAFFT & GRUBER, LLP

By: ______________________

Brandon S. Harter, Esquire
Attorney I.D. 307676
930 Red Rose Court, Suite 300
Lancaster, PA 17601
Telephone: (717) 293-9293
Facsimile: (717) 293-5130

*Attorneys for Plaintiff*

*Of Counsel:*

THE BRUALDI LAW FIRM, P.C.
Richard B. Brualdi
29 Broadway, Suite 2400
New York, New York 10006
Telephone: (212) 952-0602
Facsimile: (212) 952-0608

## VERIFICATION

I verify that the facts in the foregoing document are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Date: 12 / 13 / 2019

By: ______________________
Robert Garfield

01295822-1

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *public access policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellant and Trial Courts* that require filing of confidential information and documents differently than non-confidential information and documents.

RUSSELL, KRAFFT & GRUBER, LLP

By: ______________________________

Brandon S. Harter, Esquire
Attorney I.D. 307676
930 Red Rose Court, Suite 300
Lancaster, PA 17601
Telephone: (717) 293-9293
Facsimile: (717) 293-5130

*Attorneys for Plaintiff*

*Of Counsel:*

THE BRUALDI LAW FIRM, P.C.
Richard B. Brualdi
29 Broadway, Suite 2400
New York, New York 10006
Telephone: (212) 952-0602
Facsimile: (212) 952-0608

ORIGINAL IMAGED

# AFFIDAVIT OF SERVICE

| | | | |
|---|---|---|---|
| **Case:** 2019-CV-9529-CV | **Court:** COURT OF COMMON PLEAS OF DAUPHIN COUNTY, PENNSYLVANIA | **County:** DAUPHIN | **Job:** 4091182 |
| **Plaintiff / Petitioner:** ROBERT GARFIELD | | **Defendant / Respondent:** LIBERTY PROPERTY TRUST | |
| **Received by:** Process Service PA LLC | | **For:** Brualdi Law Firm | |
| **To be served upon:** LIBERTY PROPERTY TRUST | | 2019 CV 9529 CV | |

I, Blair Johnson, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** HERMAN FALA SENIOR VP/LEGAL FOR LIBERTY PROPERTY TRUST, Corporate: 650 E Swedesford Rd, Wayne, PA 19087

**Manner of Service:** Registered Agent, Dec 17, 2019, 12:18 pm EST

**Documents:** (1) Civil Cover Sheet, (2) Notice to Defend, (3) Notice Concerning Mediation of Actions Pending Before the Court of Common Pleas of Dauphin County, (4) Complaint, (5) Verification, and (6) Certificate of Compliance. (Received Dec 16, 2019 at 4:26pm EST)

**Additional Comments:**
1) Successful Attempt: Dec 17, 2019, 12:18 pm EST at Corporate: 650 E Swedesford Rd, Wayne, PA 19087 received by HERMAN FALA SENIOR VP/LEGAL FOR LIBERTY PROPERTY TRUST. Age: 60; Ethnicity: Caucasian; Gender: Male; Weight: 165; Height: 5'8"; Hair: White; Eyes: Brown;

*Subscribed and sworn to before me by the affiant who is personally known to me.*

[signature] 12/18/19

Blair Johnson — Date

[signature]

Notary Public

12/18/19 — 3/5/2022

Date — Commission Expires

Process Service PA LLC
4387 West Swamp Road Suite 207
Doylestown, Pa 18902
2153785928

Commonwealth of Pennsylvania - Notary Seal
Shanik Jackson, Notary Public
Delaware County
My commission expires March 5, 2022
Commission number 1326810
Member, Pennsylvania Association of Notaries

AE

2019 DEC 24 AM 8:14